## Thewlis's Estate.

*Marriage—Presumption as to divorce—Remarriage.*

Where a married man in England deserts his wife in 1858, and emigrates to this country, and in 1868 marries again by a religious ceremony in this country, and his wife in England marries again in 1869, and the man's first wife dies in 1891, and the man himself in 1904, and during the thirteen years from 1891 to 1904, the woman to whom he had been formally married in 1868, was recognized by him and by

herself and by the community as his lawful wife, and in 1896, they executed a deed in which they recited themselves as husband and wife, it will be presumed either that the man and his second wife were married after a divorce from the first wife, or that if no such divorce had been obtained they contracted the marriage relation after the death of the first wife.

Argued Jan. 17, 1907. Appeal, No. 183, Jan. T., 1906, by Eliza Fenton, from decree of O. C. Phila. Co., Oct. T., 1905, No. 241, dismissing exceptions to adjudication in Estate of John W. Thewlis, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to adjudication. PENROSE, J., filed the following opinion :

In view of the fact that within a few years after the decedent came to this country, in 1858, both he and his wife whom he left in England, whom he had married in 1854, married again, he in 1868 and she in 1869, the conclusion cannot be avoided without a disregard of settled principles of the law of presumptions, that there was a legal dissolution of their marriage. By her marriage in 1869 to James Hirst, the wife became the mother of six children, and he having died, in 1880, she became the wife of Charles Dyson.

Thus, if the decedent continued to be her husband, they were both guilty of bigamy, and the children by her second marriage were all illegitimate. But the presumption against crime, and still more the presumption in favor of legitimacy, forbid such a result ; and nothing less than positive, affirmative proof to the contrary can be accepted as sufficient to overcome such presumptions, especially in view of the great lapse of time and of the further fact that both parties are dead. Every intendent and every inference will be made in favor of innocence and legitimacy : Best on Evidence, sec. 346. " So strong is this presumption," it is said in 1 Greenleaf's Evidence, sec. 35, " that even when the guilt can only be established by proving a negative; the negative must, in such cases, be proved by the party alleging the guilt, though the general rule of law devolves the burden of proof on the party holding the affirmative." See also Wile's Estate, 6 Pa. Dist. Rep. 384 ; s. c., 6 Pa.

Superior Ct. 435 ; Richardson's Estate, 132 Pa. 292. Upon this point no importance whatever can be attached to the testimony of the daughter who remained with the wife in England, with regard to the absence of a divorce. She was but two years old when her father came to America, and but thirteen when her mother married James Hirst, in 1869. The conclusion reached by the auditing judge in favor of the claim of the wife whom the decedent married in 1868 might well be sustained on the ground thus suggested ; but he has placed it upon grounds which are unanswerable and conclusive. If, when the decedent contracted the second marriage, he had not been divorced from the woman whom, years before, he had left in England, the marriage, although solemnized in church, as it was, with due religious ceremony, was void, in spite of the conceded innocence of the wife and her ignorance of the existence of any obstacle. Nor could it have acquired validity if the first wife had survived the husband, no matter how great the lapse of time or what the belief in the community in which the parties resided. But the first wife did not survive. She died in May, 1891, and the decedent lived until October, 1904. During all this time, a period of more than thirteen years, the person to whom he had been formally married in 1868 was recognized by him and by herself and by the community as his lawful wife. Naturally there was no repetition of a marriage ceremony, or any formal expression of marriage contract, for the wife never had knowledge that the one already entered into was not valid ; but each day during these many years that they thus lived together there was an assertion by acts and conduct which in law are as efficacious as words for establishing a contract by implication.

That marriage may be established by long continued cohabitation and reputation is too well settled to require citation of authority. See Richard v. Brehm, 73 Pa. 140 ; and while there is a presumption of continuance as to a relation illicit in its inception, under such circumstances as existed in Hunt's Appeal, 86 Pa. 294, where the interval during which it might have become lawful was but two months (December 13, 1873, to February 16, 1874, or in Grimm's Estate, 131 Pa. 199, where it was but one week), the doctrine of those cases is not to be extended to one like the present, where in

good faith the parties continue to live together as husband and wife, after the complete removal of the only obstacle in the way of a valid marriage, and so for many years continuously proclaim themselves to the public until the relation ceases by the husband's death.

The presumption of continuance of an illicit relation, under such circumstances, gives away to the superior presumption in favor of compliance with the requirements of the law, of morality, and of common decency. See Greenleaf on Evidence, sec. 41 ; Bergdoll's Estate, 7 Pa. Dist. Rep. 137.

In Hantz v. Sealy, 6 Binney, 405, which is supposed by the exceptant to establish the doctrine that when the relation was originally illicit it cannot become lawful without a formal and express declaration, the woman, who did not make such declaration, appears to have left the man after his divorce from the wife, and, without asserting a marriage, sued him in her unmarried name for a legacy which had been left to her by a testator of whose will the defendant was executor, the defense being, inter alia, that the suit could not be maintained because the plaintiff was the wife of the defendant. What was said by the court with regard to the marriage was said with reference to the facts thus disclosed by the evidence, and has no application to the very different facts of the present case.

But the case does not rest upon the mere long continued cohabitation and reputation after the death of the first wife. There was not only the introduction of the wife as such to strangers by the husband, but the fact that they were husband and wife was solemnly recited and declared in a deed, duly executed and acknowledged by both, to the city of Philadelphia, in December, 1896, and in the face of this deed a finding that there was then no valid marriage would be impossible. The case might safely rest on this alone. Nothing need be added to what has been said by the auditing judge on the subject of commissions. See also Mayberry's Appeal, 33 Pa. 258.

The exceptions are dismissed and the adjudication confirmed absolutely.

*Error assigned* was the decree of the court.

*Joseph H. Taulane*, of *White, White & Taulane*, with him

*Ernest E. Prevost* and *Thomas Earle White,* for appellant.—
A marriage will not be presumed where a man, during the
lifetime of his lawful wife, whom he has deserted, contracts a
second marriage, and it affirmatively appears that after the
death of the lawful wife no subsequent marriage of any kind
was entered into between the man and the alleged second
wife : Physick's Estate, 2 Brews. 179 ; Heffner v. Heffner, 23
Pa. 104; Thomas v. Thomas, 124 Pa. 646; Clark's Est., 173
Pa. 451; Hantz v. Sealy, 6 Binn. 405; Commonwealth v.
Stump, 53 Pa. 132 ; Richard v. Brehm, 73 Pa. 140 ; Comly's
Est., 185 Pa. 208 ; Hines's Est., 10 Pa. Superior Ct. 124.

While in the absence of direct proof of such fact, marriage
may be proved by cohabitation and reputation, such elements
of proof do not constitute marriage : Richard v. Brehm, 37
Pa. 140 ; Tholey's Appeal, 93 Pa. 36; Grimm's Estate, 131
Pa. 199 ; Reading Fire Ins., etc., Co.'s Appeal, 113 Pa. 204 ;
Yardley's Est., 75 Pa. 207; Hunt's Appeal, 86 Pa. 294.

It seems to be well-nigh universally established, however,
that where the relation between a man and woman is illicit
at its inception, such relation is presumed to continue illicit
until there is proof of a changed relation, either by the rati-
fication of a new and valid contract of marriage, or the proof
of such facts and circumstances from which a marriage in
fact may be presumed : 1 Bishop on Mar., Div. & Sep., sec.
961, p. 149 ; Schouler on Domestic Relations, sec. 26 ; Cun-
ninghams v. Cunninghams, 2 Dow, 482 ; Lapsley v. Grierson,
1 H. L. Cas. 498 ; Physick's Estate, 2 Brews. 179; Bicking's
App. 2 Brews. 202; Grimm's Est., 131 Pa. 199 ; Reading Fire
& Trust Co.'s Appeal, 113 Pa. 204; Hunt's Appeal, 86 Pa.
294; Bergdoll's Est., 7 Pa. Dist. Rep. 138; Hunt v. Cleveland,
6 Pa. C. C. Rep. 592; Weitzel v. Central Lodge, 1 Pa. Dist.
Rep. 143 ; Jones v. Jones, 4 Pa. Dist. Rep. 223 ; Staiger's Est.,
7 Pa. Dist. Rep. 351.

The dissolution of the marriage of testator with his first
wife, by divorce, will not be presumed, in the absence of any
evidence to that effect, in order to support the validity of the
second marriage: O'Gara v. Eisenlohr, 38 N. Y. 296 ; Wile's
Est., 6 Pa. Superior Ct. 435 ; Randlett v. Rice, 141 Mass. 385 ;
Collins v. Voorhees, 47 N. J. Eq. 555 (22 Atl. Repr. 1054);
Cartwright v. McGown, 121 Ill. 388 (12 N. E. Repr. 737).

*N. Dubois Miller*, of *Biddle & Ward*, with him *H. Alan Dawson*, for appellee.—The presumption in favor of innocence and of legitimacy both compel the conclusion that a divorce had been obtained by one or the other of the parties to the original marriage between John W. Thewlis and his first wife before either of their second marriages took place: Hynes v. McDermott, 91 N. Y. 451; Senser v. Bower, 1 P. & W. 550; Richardson's Est., 132 Pa. 292; Wile's Est., 6 Pa. Superior Ct. 435; Blanchard v. Lambert, 43 Iowa, 228; Harris v. Harris, 8 Ill. App. 57; Coal Run Coal Co. v. Jones, 127 Ill. 379 (8 N. E. Repr. 865); Klein v. Laudman, 29 Mo. 259.

When a man and woman have entered into a formal marriage relation which at the time is invalid because of a pre-existing obstacle, and when the obstacle has been removed, they continue to live together as man and wife for a long period of time, recognizing the existence of the marriage relation between them by many indisputable proofs, there is sufficient evidence upon which a jury or judge in the orphans' court may find as a fact that at the time of the death of one of them the marriage relation existed: Physick's Est., 2 Brews. 179; Vincent's App., 60 Pa. 228; Drinkhouse's Est., 151 Pa. 294; Pickens's Est., 163 Pa. 14; Strauss's Est., 168 Pa. 561; Staiger's Est., 7 Pa. Dist. Rep. 351; Wile's Est., 6 Pa. Superior Ct. 435; McCausland's Est., 213 Pa. 189; Campbell v. Campbell, L. R. 1 Sc. &. Div. App. Cases, 182; Hicks v. Cochran, 4 Edw. 107; Rose v. Clark, 8 Paige, 574; Fenton v. Reed, 4 Johns. 52; Blanchard v. Lambert, 43 Iowa, 228; Donnelly v. Donnelly, 8 B. Mon. (Ky.) 113; Teter v. Teter, 88 Ind. 494; Hantz v. Sealy, 6 Binney, 405; Hunt's App., 86 Pa. 294; Grimm's Est., 131 Pa. 199; Bott's Est., 10 Pa. Dist. Rep. 122; Hunt v. Cleveland, 6 Pa. C. C. Rep. 592; Philbrick v. Spangler, 15 La. Ann. 46.

PER CURIAM, April 1, 1907:

Decree affirmed on the opinion of Judge PENROSE, dismissing exceptions to the adjudication.